UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| NADA PACIFIC CORP, | No. C 13-04325 LB |
| Plaintiff, | **ORDER GRANTING BESSER'S MOTION TO DISMISS AKKERMAN'S COUNTER-CLAIMS** |
| v. | |
| POWER ENGINEERING AND MANUFACTURING, LTD., et al., | [Re: ECF No. 29] |
| Defendant | |
| AND RELATED COUNTER- AND CROSS-CLAIMS | |

**INTRODUCTION**

This action arises from the failure of a microtunnel boring machine (the "boring machine") during a construction project that plaintiff Nada Pacific Corporation ("Nada") performed for the San Francisco Public Utility Commisison ("SFPUC"). Defendant/counter-defendant Besser Company ("Besser") now moves to dismiss the counterclaims of Akkerman Inc. ("Akkerman"). Upon consideration of the papers submitted, the arguments of counsel at the February 6, 2014 hearing, and applicable authority, the court **GRANTS** Besser's motion.[1]

---

[1] All parties to this action have consented to the undersigned's jurisdiction. Consent (Nada), ECF No. 10; Consent (Besser), ECF No. 15; Consent (PEM), ECF No. 22-2; Consent (Akkerman), ECF No. 26.

C 13-04325 LB
ORDER

**STATEMENT**

In relation to a construction project, Nada received a subcontract from SFPUC to construct a subsurface tunnel using a microtunnel boring machine. Nada Complaint, ECF No. 6 ¶¶ 7, 14.[2] Nada leased the boring machine used on the project from Akkerman. *Id.* ¶ 20. The boring machine contained a gear box that was designed and manufactured by Power Engineering & Manufacturing, Ltd. ("PEM"). *Id.* ¶ 27. Besser manufactured an iron casting that PEM used to manufacture the gear box. *Id.* The gear box in the boring machine failed, which caused the boring machine to become immobilized underground. *Id.* ¶¶ 32-33. A rescue shaft had to be constructed to get the boring machine out. *Id.* ¶¶ 38-39.

Thereafter, Nada and Akkerman entered into a settlement agreement, pursuant to which Nada paid $165,000 to Akkerman and Akkerman irrevocably assigned to Nada all of its rights, title, and interest to claims "allowing [Nada] to pursue other parties for damages relating to the cause of the immobilized [boring machine] and failure of the gearbox." Akkerman Counter-Claims, ECF No. 24 ¶ 6 & Ex. A ("Settlement Agreement"). Nada and Akkerman also agreed to mutually release each other for all claims arising out of the project at issue here. *Id.*, Ex. A (Paragraph 8 of the Settlement Agreement).[3]

On October 4, 2013, Nada filed a first amended complaint against PEM and Besser. Nada Complaint, ECF No. 6. It brings claims for strict liability, negligence, equitable indemnity, fraud, and negligent misrepresentation. *Id.*

On November 14, 2013, PEM filed a third-party complaint against Akkerman and Besser. PEM Third Party Complaint ("PEM TPC"), ECF No. 22. In it, citing the written terms and conditions and limited warranty relating to PEM's sale of the gearbox to Akkerman, PEM alleges that Akkerman

---

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

[3] The release states in pertinent part: "Subject to the continuing obligations expressed herein, the Parties acknowledge that all matters arising out of the claims set forth above are fully compromised and settled. In furtherance thereof, each of Akkerman and NPC . . . hereby releases and forever discharges the other party . . . from any and all claims . . . arising out of, in any way connected with or resulting from, the Project."

C 13-04325 LB
ORDER                                           2

"was bound by the written Terms and Conditions, and Limited Warranty, which require AKKERMAN 'to defend [PEM] against such claims at [Akkerman's] expense, including attorney's fees and to indemnify and hold [PEM] harmless against any such claims or judgments thereon." *Id.* ¶¶ 11-14, 19 & Ex. B. PEM alleges that "[a]s a result of indemnity provisions of the Terms and Conditions and Limited Warranty . . . AKKERMAN has a present duty to defend and indemnify PEM from the claims asserted by [Nada] in [the Nada Complaint]." *Id.* ¶ 20.

On December 5, 2013, Akkerman filed counter-claims against Nada and Besser. Akkerman Counter-Claims, ECF No. 24. Against Nada, Akkerman asserts a counter-claim for declaratory relief (Count One). *Id.* ¶¶ 3-9. Against Besser, Akkerman asserts counter-claims for equitable subrogation (Count Two), equitable indemnity (Count Three), contribution (Count Four), declaratory relief (Count Five), fraud (Count Six), and negligent misrepresentation (Count Seven). *Id.* ¶¶ 10-51.

On December 12, 2013, Besser filed a motion to dismiss all five of Akkerman's counter-claims against it. Motion, ECF No. 29. Akkerman timely filed an opposition to Besser's motion on December 23, 2013. Opposition, ECF No. 33. On December 26, 2013, Nada filed a "joinder" to Akkerman's opposition, which is neither signed nor dated and simply states that it believes Akkerman's opposition is "well founded." Joinder, ECF No. 34. Besser filed a reply on January 2, 2014. Reply, ECF No. 39. The court heard oral arguments from the parties on February 6, 2014. 2/6/2014 Minute Order, ECF No. 45.

**ANALYSIS**

**I. LEGAL STANDARD**

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a

1  Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to
2  provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a
3  formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be
4  enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal
5  citations and parenthetical omitted).

6  In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true
7  and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *Erickson v. Pardus*, 551
8  U.S. 89, 93–94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).  This
9  is particularly true where a plaintiff represents himself *pro se*.  "A document filed *pro se* is to be
10 liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent
11 standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

12 If the court dismisses the complaint, it should grant leave to amend even if no request to amend
13 is made "unless it determines that the pleading could not possibly be cured by the allegation of other
14 facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc.*
15 *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

## II. AKKERMAN'S CONTRIBUTION CLAIM IS DISMISSED WITHOUT PREJUDICE

17 As an initial matter, the court addresses Akkerman's contribution claim.  In its motion, Besser
18 asks the court to dismiss this claim with prejudice, arguing that Akkerman's claim fails under
19 California Code of Civil Procedure § 875 because the court has not entered, and cannot enter
20 (because of the Nada-Akkerman Settlement Agreement), a judgment finding Besser and Akkerman
21 jointly and severally liable in tort.  Motion, ECF No. 29 at 16-18.  In its opposition, Akkerman
22 concedes that its claim is premature and says that it should be dismissed for the time being.
23 Opposition, ECF No. 7-8.  In light of Akkerman's concession, the court will dismiss the claim, but it
24 will do without prejudice because, as explained in more detail below with respect to Akkerman's
25 equitable indemnity claim, on this record the court cannot rule that Besser and Akkerman cannot be
26 jointly and severally liable in tort.  Accordingly, the court **DISMISSES WITHOUT PREJUDICE**
27 Akkerman's claim for contribution against Besser (Count Four).

### III. AKKERMAN'S CLAIM FOR EQUITABLE SUBROGATION FAILS

As stated above, Akkerman brings a claim against Besser for equitable subrogation. "Subrogation is defined as the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim. By undertaking to indemnify or pay the principal debtor's obligation to the creditor or claimant, the 'subrogee' is equitably *subrogated* to the claimant (or 'subrogor'), and succeeds to the subrogor's rights against the obligor." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1291-92 (1st Dist. 1998) (italics in original). The California Supreme Court has stated that

> One who claims to be equitably subrogated . . . must satisfy certain prerequisites. These are: "(1) Payment [was] made by the subrogee to protect his own interest. (2) The subrogee [has] not . . . acted as a volunteer. (3) The debt paid [was] one for which the subrogee was not primarily liable. (4) The entire debt [has] been paid. (5) Subrogation [would] not work any injustice to the rights of others."

*Caito v. United California Bank*, 20 Cal. 3d 694, 704 (1978) (quoting *Grant v. de Otte*, 122 Cal. App. 2d 724, 728 (4th Dist. 1954)); *see also Han v. U.S.*, 944 F.2d 526, 529 (9th Cir. 1991) (quoting these prerequisites). "'As now applied (the doctrine of equitable subrogation) is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.'" *Id.* (quoting *Estate of Kemmerrer*, 114 Cal. App. 2d 810, 814 (2d Dist. 1952)).

Besser argues that Akkerman's claim fails because Akkerman has not yet paid a debt on PEM's behalf.[4]   First, Besser cites authority holding that a subrogee does not subrogate to a subrogor until

---

[4] Besser also argues that allowing Akkerman to subrogate to PEM's claims would create an injustice to PEM and Besser in light of PEM's own claims against Besser. *See* Motion, ECF No. 11-12. As the subrogee "stands in the shoes" of the subrogor, Besser says that Akkerman "unfairly claims 'real party in interest' status regarding PEM's claims and thus deprives PEM of autonomy over its own claims" and forces Besser to defend itself against two parties regarding the same claim. *Id.* Because the court addresses this argument when discussing below why the circumstances of this case are different than those presented in *Liberty Mutual Insurance Co. v. Harris, Kerr, Forster & Co.*, 10 Cal. App. 3d 1100 (2d Dist. 1970), the court discusses all of Besser's arguments together. The court does, however, reject Akkerman's argument that Besser cannot make this argument at this stage because it constitutes an affirmative defense. *See* Opposition, ECF No. 33 at 4-6. As *Caito* makes clear, showing that "[s]ubrogation [would] not work any injustice to the rights of others" is a prerequisite to an equitable subrogation claim. 20 Cal. 3d at 704.

C 13-04325 LB
ORDER                                          5

the subrogee pays a debt on behalf of the subrogor.  *See Pacific Gas and Elec. Co. v. Superior Court*, 144 Cal. App. 4th 19, 23 (3d Dist. 2006) ("'Subrogation is the right of an insurer to take the place of its insured to pursue recovery from legally responsible third parties for losses *paid to the insured* by the insurer.'") (quoting *Kardly v. State Farm Mut. Auto. Ins. Co.*, 207 Cal. App. 3d 479, 488 (2d Dist. 1989)) (italics added in *Pacific Gas and Elec. Co.*); *id.* at 24 ("[U]nder the general law of subrogation, [insurer] has a right to sue only for its subrogated loss, i.e., what it paid its insured."); *Sapiano v. Williamsburg Nat. Ins. Co.*, 28 Cal. App. 4th 533, 536-37 (2d Dist. 1994) ("'The general rule is that an insurer that pays a portion of the debt owed to the insured is not entitled to subrogation for that portion of the debt until the debt is fully discharged.  In other words, the entire debt must be paid.  Until the creditor has been made whole for its loss, the subrogee may not enforce its claim based on its rights of subrogation.'") (quoting 2 Cal. Insurance Law & Practice § 35.11[4][b] at 35-47 (1988 rev.) (footnotes omitted)); *Pacific Gas & Elec. Co. v. Superior Court*, 28 Cal. App. 4th 174, 183 (1st Dist. 1994) ("Only upon paying benefits to PG&E would National Union be subrogated to PG&E's rights against Allen and Swafford."); *see also State Bar of California v. Statile*, 168 Cal. App. 4th 650, 663 (1st Dist. 2008) ("The payment of a debt is a prerequisite to acquiring subrogation rights.") (citing *Putnam v. Comm'r*, 352 U.S. 82, 85 (1956) ("The familiar rule is that, instanter upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor, not a new debt, but, by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditor's shoes."); *Smith v. Parks Manor*, 197 Cal. App. 3d 872, 879 ("upon paying its insured's claim in extinguishment of the settlement debt, intervener became subrogated to the insured's right to seek equitable indemnity")).

Besser then points out that Akkerman does not allege that it has paid a debt on behalf of PEM. *See generally* Akkerman Counter-Claim, ECF No. 24.  Instead, Akkerman relies upon the possibility that it will have to pay a debt on PEM's behalf some time in the future.  *See id.* ¶¶ 11 ("PEM has . . . asserted that, pursuant to the written agreement between Akkerman and PEM, Akkerman must defend and indemnify PEM from Nada's claims in order to protect PEM's interests."), 13 ("[A]s the alleged express indemnitor to PEM, Akkerman is is subrogated to the rights PEM has against Besser

[to] the extent of any amounts Akkerman is found to be liable to PEM."). This is not sufficient under California law. *See Iusi v. City Title Ins. Co.*, 213 Cal. App. 2d 582, 587-88 (1st Dist. 1963) (plaintiff's equitable subrogation theory failed because, among other things, he failed to plead or prove that he paid the judgment at issue and thereby had acquired a right, as a subrogee, to proceed against the defendant) (citing *Arp v. Blake & Cohn*, 63 Cal. App. 362, 366-67 (2d Dist. 1923) ("The doctrine of subrogation requires that the person seeking its benefit must have paid a debt due to a third person before he can be substituted to that person's rights and it is not the liability to pay but an actual payment to the creditor which raises the equitable relief. The right of . . . subrogation, therefore, did not accrue in favor of [Arp] until his payment of the . . . judgment on July 1st.") (internal citations omitted)); *see also HCC Life Ins. Co. v. Managed Benefit Admin'rs LLC*, No. 2:07-cv-02542-MCE-DAD, 2008 WL 2439665, at *3 (E.D. Cal. June 12, 2008) (dismissing without prejudice equitable subrogation claim where the plaintiff had not yet paid its insured's debt; the plaintiff conceded as much when it alleged that it was "entitled, through subrogation, to reimbursement from [the defendants] for any amounts *that it pays*" for the claim at issue) (emphasis in original).

    In its opposition, Akkerman does not take issue with the general rule that a subrogee must have paid the subrogor before it may bring a claim for equitable subrogation. *See generally* Opposition, ECF No. 33. Instead, it cites *Liberty Mutual Insurance Co. v. Harris, Kerr, Forster & Co.*, 10 Cal. App. 3d 1100, 1103 (2d Dist. 1970), and *Plut v. Fireman's Fund Insurance Company*, 85 Cal. App. 4th 98, 104-07 (2d Dist. 2000), which relies in part upon *Liberty Mutual*, and argues that, "in circumstances such as those existing [among] Akkerman, PEM, and Besser, the party asserting the right of subrogation *may* seek declaratory relief on the matter *without* paying the underlying debt." Opposition, ECF No. 33 at 2. Akkerman is correct that *Liberty Mutual* does appear to allow, in limited circumstances, a party to bring a declaratory judgment action on subrogation rights prior to the future subrogee fully paying the future subrogor. In that case, two defendant insurance companies insured the plaintiff-insured against any loss caused by the dishonesty of an employee. *Liberty Mutual*, 10 Cal. App. 3d at 1101. The insured suffered a $113,442.99 loss caused by the dishonesty of an employee, and the insurers denied the claims and refused to indemnify the plaintiff.

*Id.* at 1102. The insured then sued the insurers seeking payment under the insurance policies, and the insurers each brought cross-claims for declaratory relief against the third-party accounting firm allegedly at fault for the underlying loss. *Id.* The insurers alleged that the accounting firm negligently audited the books of the insured and that if the accounting firm had exercised the ordinary care in auditing those books the dishonesty of the insured's employee would have been discovered in time to prevent or mitigate the insured's loss. *Id.* Thus, in the court's words, in the declaratory relief action the insurers were proceeding on "a sort of 'presubrogation' theory," contending that if the insurers were liable to the insured, the accounting firm was liable to the insurers. *Id.* The court held that the cross-claims withstood demurrer because they were solely claims for declaratory relief and were not "attempt[s] to obtain a money judgment against a third person by a subrogee who had not paid the subrogor." *Id.* at 1104. It reasoned:

> The question is whether the insurers may assert the insured's rights against the accountants. It is undisputed that neither an indemnitor nor a surety may recover damages from a third person unless the indemnitor or surety has suffered damages, i.e., has actually made the payment required by the contract of indemnity or surety. Here neither insurer has paid the insured.
>
> The accountants make a very persuasive argument that permitting a surety or indemnitor to circumvent the necessity of payment as a prerequisite to bringing suit based on the rights of the unpaid indemnitee or promisee of a surety undermines the purpose of contracts such as are here involved. Instead of promptly paying the insured and thereafter asserting the insured's rights against third persons who may be liable, an insurer is encouraged to refuse payment by denying liability and asserting that if the insurer is liable to the insured, a third person is liable to the insurer. During the months and years that it takes to litigate such a matter, the insured who has paid for the right to be promptly indemnified for his loss remains unpaid.
>
> We are convinced, however, that this undesirable situation is precisely what is permitted by the decisions which are controlling upon us. In *Roylance v. Doelger* (1962) 57 Cal. 2d 255 [19 Cal. Rptr. 7, 368 P.2d 535] Mr. and Mrs. Bullis had recovered in another action judgment of $5,116.07 against plaintiff corporation which paid the judgment. Plaintiff corporation then instituted an action to recover that amount from its liability insurance carrier. The insurance carrier answered denying liability and cross-complaining against Mr. and Mrs. Doelger on the ground that plaintiff corporation in doing the act for which judgment was taken against it was acting under the direction and control of Mr. and Mrs. Doelger. The cross-complaint alleged that if plaintiff recovers from its liability insurance carrier, the liability insurance carrier "will be subrogated to plaintiff's alleged right to indemnity from" Mr. and Mrs. Doelger. The cross-complaint was in the form of a declaratory relief action. The Supreme Court reversed the order of the trial court striking the cross-complaint. The opinion deals principally with the propriety of the cross-complaint under the amended provisions of section 442 of the Code of Civil Procedure. Nothing was said about the propriety of the insurance carrier's assertion of the rights of its insured against Mr. and Mrs. Doelger when its insured had not been paid.

> In *Rimington v. General Accident Group of Ins. Cos.* (1962) 205 Cal. App. 2d 394 [23 Cal. Rptr. 40] the cross-defendants raised the issue "that the right to sue for indemnity accrues only after payment has been made . . . [.]" The court brushed aside this argument by pointing out that the cross-complaint was merely for declaratory relief.
>
> In *B.F.G. Builders v. Weisner & Coover Co.* (1962) 206 Cal. App. 2d 752 [23 Cal. Rptr. 815] a cross-complaint based upon indemnification was held to lie without any discussion by the court of the effect of failure to pay.
>
> In *Dreybus v. Bayless Rents* (1963) 213 Cal. App. 2d 506 [28 Cal. Rptr. 825] the court acknowledged that it "was the well established rule of the common law that an action for indemnity could not be maintained until the person seeking indemnity had paid the claim in question. It followed therefrom that an attempt to involve the alleged indemnitor in the original action was premature." The court concluded, however, that on the basis of *Roylance* and its progeny "the courts of California have now definitely agreed upon the rule that a defendant may, by cross-complaint for a declaration of the rights of the [parties], bring in a party from whom he claims indemnity in case he be held liable in the principal action. There perhaps would be some uncertainty if the cross-complaint was strictly in the form of an action for indemnity due to the provisions of section 2778 of the Civil Code. However, the courts are committed to the theory that a cross-complaint in the form of an action for declaratory relief may properly be maintained under the circumstances." The same result was reached in *J.C. Penney Co. v. Westinghouse Electric Corp.* (1963) 217 Cal. App. 2d 834 [32 Cal. Rptr. 172].
>
> In *Hartford Acc. & Indem. Co. v. Bank of America* (1963) 220 Cal. App. 2d 545 [34 Cal. Rptr. 23] the insurer was liable to the insured in the amount of $2,500 because of a dishonest act of the insured's employee. The employee was able to perpetrate the act because of the negligence of the Bank of America. Without paying the insured, the insurer brought an action for declaratory relief against the Bank of America and the appellate court held that the insurer was entitled to maintain the action.
>
> The accountants rely upon *Iusi v. City Title Ins. Co.* (1963) 213 Cal. App. 2d 582 [28 Cal. Rptr. 893] and similar cases. But in *Iusi*, as in each of the other cases cited by the accountants, the action was not one for declaratory relief, but an attempt to obtain a money judgment against a third person by a subrogee who had not paid the subrogor. While the difference in result based upon the form of pleading is difficult to justify, it nevertheless exists.

*Id.* at 1102-04. The court in *Plut* acknowledged (albeit in dicta) the validity of *Liberty Mutual*'s holding, noting that "in suitable circumstances, the party asserting the right of subrogation may seek declaratory relief on this matter without paying the underlying debt." 85 Cal. App. 4th at 106.

The court, however, does not believe that this action presents the "suitable circumstances" to allow Akkerman's claim—which is for equitable subrogation—to proceed. First, in *Liberty Mutual* the insurers brought only cross-claims for declaratory relief (even if they were based on "a sort of 'presubrogation' theory") against the third-party accounting firm; they did not also bring cross-

C 13-04325 LB
ORDER                                        9

1    claims for equitable subrogation. Here, Akkerman brings both, distinguishing its claim for equitable
2    subrogation from its claim for declaratory relief. *See HCC*, 2008 WL 2439665, at *3 (explicitly
3    considering *Liberty Mutual* and refusing to find "suitable circumstances" where a plaintiff brought
4    equitable subrogation and declaratory relief claims against the defendants). Second, in *Liberty*
5    *Mutual* the insured sued only its two insurers; the third party accounting firm was not in the case
6    before the insurers' cross-claims for declaratory judgment. Here, however, PEM (the subrogor or
7    "insured") sued *both* Akkerman (PEM's alleged contractual indemnitor) *and* Besser (the allegedly
8    "at fault" party). This, then, creates a legal problem wherein Besser has been sued by PEM (on
9    PEM's own behalf) and Akkerman (also on PEM's behalf). As Besser states, "the *Liberty Mutual*
10   court was not faced with the problem present here of two parties trying to stand in one pair of shoes,
11   when only one legally can."[5] Reply, ECF No. 39 at 6 (citing *Griffin v. Calistro*, 229 Cal. App. 3d
12   193, 196 (2d Dist. 1991) (the "general rule of subrogation provides that an insurer stands in the
13   shoes of its insured")). Third, in *Liberty Mutual* the insured's loss ($113,442.99) was pre-existing
14   and defined before the insurers brought their cross-claims for declaratory relief. Here, this is not
15   possible because PEM has suffered no loss yet. Indeed, the loss may never occur, and even if it
16   does, it will not be known until a final judgment is entered against PEM. This runs afoul of court
17   opinions, which, at least in the insurance context, require the loss to be certain. *See Maryland Cas.*
18   *Co.*, 65 Cal. App. 4th at 1292 (listing as an "essential element" of an equitable subrogation claim
19   that "the insurer's damages are in a liquidated sum, generally the amount paid to the insured"); *see*
20   *also AIU Ins. Co. v. Acceptance Ins. Co.*, No. C 07-5491 PJH, 2008 WL 4937830, at *4 (N.D. Cal.
21   Nov. 17, 2008) (dismissing an equitable subrogation claim because the plaintiff did not allege that
22   the insurer's damages were "in a stated sum").

23   In sum, the general rule is that a subrogee must have paid the subrogor before it may bring a
24   claim for equitable subrogation, and Akkerman does not allege that it has paid anything to PEM.
25   Although *Liberty Mutual* does allow, in limited circumstances, a party to bring a declaratory

---

[5] Besser does note that while an insured and subrogated insurer may sometimes bring the same claims against a third party in the event of partial indemnification, *see Allstate Ins. Co. v. Mel Rapton, Inc.*, 77 Cal. App. 4th 901, 908 (3d Dist. 2000) (citations omitted), that is not the situation here.

judgment action on subrogation rights prior to the future subrogee fully paying the future subrogor, those limited circumstances do not exist here.  Accordingly, Akkerman's equitable subrogation claim against Besser is **DISMISSED WITHOUT PREJUDICE**.

### III. AKKERMAN'S CLAIM FOR EQUITABLE INDEMNITY FAILS

Akkerman also brings a claim against Besser for equitable indemnity.  Equitable indemnity "relates to the allocation of loss among multiple tortfeasors." *Fireman's Fund Ins. Co. v. Haslam*, 29 Cal. App. 4th 1347, 1353 (1st Dist. 1994) (citing *American Motorcycle Ass'n v. Superior Court*, 20 Cal. 3d 578, 583 (1978)).  "The duty to indemnify may arise and indemnity may be allowed when in equity and good conscience the burden of a judgment should be lifted from a person seeking indemnity to one from whom indemnity is sought.  The right depends on the principle that everyone is responsible for the consequences of his or her own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him or her." *Id.* (citations omitted).  "Under the doctrine of equitable indemnity, one tortfeasor may obtain partial indemnity from another tortfeasor on a comparative fault basis." *Id.* (citations omitted).  "Thus, liability for the injury is borne by each individual tortfeasor in direct proportion to his or her respective fault." *Id.* (citation omitted).  In this context, "joint tortfeasor" "does not mean the defendants were 'joined' as tortfeasors by the plaintiff; it is a broad term which includes joint, concurrent[,] and successive tortfeasors." *Gem Developers v. Hallcraft Homes of San Diego, Inc.*, 213 Cal. App. 3d 419, 431 (4th Dist. 1989) (citing *Considine Co. v. Shadle, Hunt & Hagar*, 187 Cal. App. 3d 760, 767 (4th Dist. 1986)).

In case it is not clear from the above quotations, California appellate courts have stated that "[i]t is well-settled in California that equitable indemnity is only available among *tortfeasors* who are jointly and severally liable for the plaintiff's injury." *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group*, 143 Cal. App. 4th 1036, 1040 (1st Dist. 2006) (citing *Leko v. Cornerstone Bldg. Inspection Serv.*, 86 Cal. App. 4th 1109, 1115 (2d Dist. 2001); *Munoz v. Davis*, 141 Cal. App. 3d 420, 425 (2d Dist. 1983)) (italics in original); *see also In re Medical Capital Sec. Litig.*, 842 F. Supp. 2d 1208, 1213 (C.D. Cal. 2012) (noting the clear rule in California and stating that "both the party seeking indemnification and the party from which it seeks indemnification must be

tortfeasors") (citations omitted).

Besser makes two arguments. First, Besser asserts that, "[a]s alleged by Akkerman, the relevant plaintiff for purposes of Akkerman's equitable indemnity liability claim is PEM because it is Akkerman's potential liability *to PEM* that it seeks to apportion through equitable indemnity." Motion, ECF No. 29 at 13 (citing Akkerman Counter-Claims, ECF No. 24 ¶ 16 ("In the event Akkerman is found liable *to PEM* . . . .") (emphasis in original). It argues that Akkerman's potential liability stems not PEM's alleged injury to Nada but from Akkerman's "voluntarily assumed contractual obligation to indemnify PEM" for Nada's injury, and says that it and Akkerman are not joint tortfeasors with respect to Akkerman's indemnification obligation. *Id.* Second, Besser argues that, even if Nada (and not PEM) was considered the relevant plaintiff for purposes of Akkerman's equitable indemnity liability claim, it cannot be a joint tortfeasor with respect to Nada's injuries because Nada released Akkerman from any liability related to this project in Paragraph 8 of the Nada-Akkerman Settlement Agreement. *Id.* at 13-15. Besser does not, however, cite authority for its proposition that a mutual release can extinguish one's factual role as a tortfeasor, rather than simply extinguishing one's legal liability for that tort.

Akkerman's opposition does not address Besser's arguments head-on. It does not appear to argue that it and Besser are joint tortfeasors with respect to either PEM or Nada. Instead, citing a few California opinions that reiterate the flexible nature of equitable indemnity and describe how it aims to prevent unfairness, *see Knight v. Jewett*, 3 Cal. 4th 296, 314 (1992); *American Motorcycle*, 20 Cal. 3d at 583, Akkerman states that it "is aware of no cases in California which hold that an express indemnitor (i.e., Akkerman) cannot sue the party actually responsible for the express indemnitee's (i.e., PEM) alleged damages if said party was, or could have been, sued by the express indemnitee based on negligence of strict liability for the proposed indemnitor's (i.e., Besser) role in causing the damages at issue." Opposition, ECF No. 33 at 6. In reply, Besser explains why this statement does not successfully rebut its arguments:

> Besser agrees that there is no authority prohibiting the suit Akkerman describes because Akkerman is describing equitable subrogation, based on stepping into the shoes of the 'express indemnitee,' not equitable indemnity based on joint tort liability. If Akkerman, as the alleged express indemnitor of PEM, actually indemnifies PEM for a judgment rendered against PEM, then Besser does not dispute that Akkerman could potentially step into PEM's shoes and sue Besser under an

UNITED STATES DISTRICT COURT
For the Northern District of California

> equitable subrogation theory that mirrors the claim Akkerman describes. However, as discussed above, payment of the indemnitee's debt is a required element of that claim. That has not occurred here. And no California cases have applied equitable indemnity to circumvent the requirements of equitable subrogation, as Akkerman seeks to do here.

Reply, ECF No. 39 at 11.

The court agrees with Besser that it cannot be a joint tortfeasor with respect to Akkerman's contractual relationship with PEM. Indeed, "'[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.'" *Stop Loss*, 143 Cal. App. 4th at 612-13 (quoting *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000)). Thus, to the extent that Akkerman's claim is based upon that theory, the claim fails. The court also agrees that Akkerman does not sufficiently allege that Besser is a joint tortfeasor with respect to Nada's injuries. But the court is not convinced that it is impossible for Akkerman to do so, given the lack of cited authority regarding the effect of the mutual release between Nada and Akkerman. Accordingly, because Akkerman does not allege that Besser can be and is a joint tortfeasor with respect to Nada, Akkerman's equitable indemnity claim against Besser is **DISMISSED WITHOUT PREJUDICE**. *See Stop Loss*, 143 Cal. App. 4th at 1041-42 ("Without any action sounding in tort, there is no basis for a finding of potential joint and several liability on the part of [cross-]defendant [BTMG], thereby precluding a claim for equitable indemnity.") (citation and internal quotation marks omitted); *see also In re Medical Capital Sec. Litig.*, 842 F. Supp. 2d at 1215 ("Quite simply, California law is settled and it does not permit the Banks' claims for equitable indemnity because the Banks and BD Defendants are not joint tortfeasors. The California Court of Appeals has decided this issue and there is no evidence that the California Supreme Court would rule otherwise."); *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, No. C 09-04485 JF (PVT), 2010 WL 689940, at *9 (N.D. Cal. Feb. 23, 2010) (dismissing an equitable indemnity claim because the plaintiff failed to allege that it and the defendant were joint tortfeasors); *cf. Gem Developers*, 213 Cal. App. 3d at 431 ("Here, there were facts alleged that would support a finding [that] Hallcraft was a joint tortfeasor with GEM, i.e., that the actions of Hallcraft and GEM combined to cause the Association's injury."). Akkerman must do so in any future claim to survive another motion to dismiss. *See Chubb Custom*, 2010 WL 689940, at *9.

## IV. AKKERMAN'S CLAIM FOR DECLARATORY RELIEF FAILS

In its claim for declaratory relief, Akkerman alleges that

> an actual dispute and controversy exists between Akkerman and Besser regarding their respective rights, duties and obligations, in that Akkerman denies responsibility for liability to PEM and contends that liability for Nada Pacific's injuries, as alleged in [the Nada Complaint], and PEM's damages, alleged in the third-party complaint filed by PEM against Akkerman, should be assigned to Besser and other parties in direct proportion to the fault of each party which caused the damages and injuries. Akkerman further contends that it should be fully indemnified by Besser, or at a minimum to be required only to contribute equitably in proportion to PEM's percentage fault in causing injury to [Nada], if any harm there be.

Akkerman Counter-Claims, ECF 24 ¶ 21. As Besser points out, through this claim, Akkerman is asking the court to determine Akkerman's rights to seek indemnity from Besser or to subrogate to PEM's claims against Besser. But as explained and ruled above, Akkerman cannot do this (at least right now and in these circumstances). In other words, because Akkerman's declaratory relief claim depends upon the sufficiency of its equitable subrogation and equitable indemnity claims, and because the court has dismissed both of those claims, Akkerman's declaratory relief claim, as alleged, necessarily fails. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (a declaratory relief claim is properly dismissed when it is duplicative of other claims); *Karimi v. GMAC Mortgage*, No. 11-CV-00926-LHK, 2011 WL 3360017, at *5 (N.D. Cal. Aug. 2, 2011) (dismissing for lack of actual controversy a declaratory relief claim that was duplicative of meritless substantive claims). Accordingly, Akkerman's declaratory relief claim against Besser is **DISMISSED WITHOUT PREJUDICE**.

## V. AKKERMAN'S CLAIMS FOR FRAUD AND NEGLIGENT MISREPRESENTATION FAIL

Akkerman also brings claims for fraud and negligent misrepresentation, both of which are based on the same factual allegations. It alleges that PEM issued a purchase order contract to Besser for an iron casting to be used by the gear box that PEM was manufacturing. Akkerman Counter-Claims, ECF No. 24 ¶¶ 24, 39. The purchase order was based on a drawing supplied by PEM that required the casting to be "80-60-03," meaning the casting would have a tensile strength of 80,000 psi, a yield strength of 60,000 psi, and an elongation of 3% in 2. *Id.* Besser issued to PEM a written sales order acknowledgment whereby Besser agreed to supply the iron casting meeting these

requirements. *Id.* ¶¶ 25, 40. Later, after manufacturing the iron casting and shipping it to PEM, Besser submitted to PEM an invoice that represented that the casting met the requirements specified by the purchase order. *Id.* ¶¶ 27, 42. Akkerman alleges that this representation was false; the casting did not meet these requirements. *Id.* ¶¶ 28, 43. Akkerman also alleges that Besser either knew that it was false, acting recklessly and without regard for its truth, or had no reasonable grounds to believe it was true. *Id.* ¶¶ 29, 44. Akkerman also alleges that Besser later tested the casting and found out that the casting did not meet PEM's requirements, but that Besser did not tell PEM this, even though Besser had a duty to do so. *Id.* ¶¶ 30-32, 45-47. Akkerman alleges that Besser intended to induce PEM to rely on its misrepresentation and that PEM in fact did rely on it. *Id.* ¶¶ 34-35, 49-50. Akkerman then alleges that Akkerman was harmed by Besser's conduct and suffered more than $180,000 in damages. *Id.* ¶¶ 36, 51.

In its motion, Besser argues simply that these claims fail because they derive from the representations that Besser allegedly made to PEM; thus, Akkerman is asserting claims that belong to PEM, not Akkerman. Motion, ECF No. 29 at 15. But because Akkerman has not subrogated to PEM yet (because, as discussed above, Akkerman has not paid a debt on PEM's behalf), Akkerman cannot assert those claims. *Id.* In its opposition, Akkerman argues that its claims are not solely based on a theory of equitable subrogation.[6] Opposition, ECF No. 33 at 7. Instead, its claims are its own, as its alleged that it has suffered at least $180,000 in damages as a result of Besser's conduct. *Id.* These damages, Akkerman says, are separate and distinct from any damages allegedly sustained or that will be sustained by PEM. *Id.*

In its reply, Besser responds in detail to Akkerman's argument. Reply, ECF No. 39 at 13-16. It first notes that even if Akkerman is asserting its own claims for fraud and negligent misrepresentation, Akkerman has, by its own admission, alleged only damage, and that is only one element of these claims. *Id.* at 13. This is true. The elements for fraud are: (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to

---

[6] Akkerman also argues that it can subrogate to PEM now, but the court rejected this argument above when discussing in detail Akkerman's claim for equitable subrogation.

C 13-04325 LB
ORDER                                          15

1    deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5)
2    the plaintiff suffered resulting damages. *Ragland v. U.S. Bank Nat'l Ass'n*, 209 Cal. App. 4th 182,
3    199-200 (4th Dist. 2012). And the elements for negligent misrepresentation are: (1) a
4    misrepresentation of a past or existing material fact, (2) made without reasonable ground for
5    believing it to be true, (3) made with the intent to induce another's reliance on the fact
6    misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *Id.* at
7    196. Besser also argues that to allege these claims Akkerman must be relying upon an indirect
8    deception theory (which is recognized in California), as Akkerman alleges that Besser made
9    representations to PEM, not to Akkerman. *Id.* at 13-14. Besser then points out that Akkerman has
10   not sufficiently alleged facts supporting such a theory, because, for instance, Akkerman does not
11   allege that PEM repeated Besser's representations to Akkerman, that Besser intended or had reason
12   to expect that PEM would do so, or that Besser intended Akkerman to rely on them. *See Geernaert*
13   *v. Mitchell*, 31 Cal. App. 4th 601, 605-06, 609 (1st Dist. 1995). The court agrees that Akkerman's
14   claims, as currently alleged, are not sufficient.

15   Besser then goes on to argue that Akkerman could never sufficiently make such allegations
16   because Akkerman's contract with PEM purportedly contains an "exhaustive list" of the
17   representations PEM made to Akkerman when selling the gear box and because Akkerman assigned
18   to Nada all of its claims relating to the project in the Nada-Akkerman Settlement Agreement (and in
19   fact Nada also has brought fraud and negligent misrepresentation claims against Besser). Reply,
20   ECF No. 39 at 15-16; *see* Nada Complaint, ECF No. 6 ¶¶ 59-87. These arguments warrant serious
21   consideration. Unfortunately, such consideration is not possible as Akkerman has not had a
22   sufficient opportunity to respond to them because Besser made them in a reply brief. This is not to
23   say that Besser improperly made them; rather, it simply describes the situation. It does mean,
24   however, that the court will not at this time dismiss with prejudice Akkerman's claims on these
25   grounds. Instead, the court will give Akkerman another attempt. Accordingly, Akkerman's fraud
26   and negligent misrepresentation claims are **DISMISSED WITHOUT PREJUDICE**.

27                                          **CONCLUSION**

28   For the reasons stated above, the court **GRANTS** Besser's motion to dismiss. The court

**DISMISSES WITHOUT PREJUDICE** Akkerman's counter-claims for equitable subrogation (Count Two), equitable indemnity (Count Three), contribution (Count Four), declaratory relief (Count Five), fraud (Count Six), and negligent misrepresentation (Count Seven).  To the extent that Akkerman's counter-claims are ripe, Akkerman may file amended counter-claims within 21 days from the date of this order.

The case management conference remains on calendar for March 27, 2014.  The parties shall file a joint case management conference statement no later than March 20, 2014.

**IT IS SO ORDERED.**

Dated: February 10, 2014

_____
LAUREL BEELER
United States Magistrate Judge